**BRYAN CAVE LEIGHTON PAISNER LLP**
Courtney J. Peterson
1290 Avenue of the Americas
New York, New York 10104
Tel:   (212) 541-2000
Fax:   (212) 541-4630
courtney.peterson@bclplaw.com

*Attorneys for Defendant Tropicana Atlantic City Corporation*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JORGE ROSA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TROPICANA ATLANTIC CITY CORPORATION d/b/a TROPICANA CASINO RESORT,<br><br>Defendant. | Case No. 1:20-CV-06909-CPO-MJS<br><br>Motion Day:  February 7, 2022 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONDITIONAL CERTIFICATION**

604572006.34

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................3

I.    Plaintiff's Request for Conditional Certification Should Be Denied..............3

    A.    Legal Standard Applicable to Conditional Certification Motions ........3

    B.    Plaintiff Has Not Made The Requisite Showing For Conditional Certification Of His Tip-Credit-Notice Claim. ....................................6

        1.    Plaintiff overstates the FLSA's tip-credit-notice requirements..6

        2.    There is no evidence from which this Court can infer that Plaintiff's alleged personal experiences are representative of all other Tipped Employees. ...........................................................8

        3.    Prior to January 2020, Tropicana Atlantic City satisfied its tip-credit-notice obligations through a combination of methods, most of which varied from employee to employee. .................18

        4.    Even if the Court finds Tropicana Atlantic City had a "commonly deficient" tip-credit-notice plan or policy prior to January 2020, there is no evidence whatsoever to conditionally certify any collective that includes Tipped Employees who did not work at the Company before January 2020. .......................27

        5.    Plaintiff's case law does not bolster his request for conditional certification. ...........................................................................29

    C.    Plaintiff Has Not Made The Requisite Showing For Conditional Certification Of His Overtime Miscalculation Claim. .......................33

CONCLUSION ...........................................................................................36

604572006.34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Las Margaritas, Inc.*,
  No. 16-1390, 2018 WL 6812370 (E.D. Pa. Dec. 27, 2018) .................... 7, 18-19

*Armstrong v. Weichert Realtors*
  2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006) .............................12, 13, 14

*Bell v. PNC Bank, N.A.*,
  800 F.3d 360 (7th Cir. 2015) ...............................................................22

*Berger v. Perry's Steakhouse of Illinois, LLC*,
  430 F. Supp. 3d 397 (N.D. Ill. 2019).................................................19

*Calabrese v. TGI Friday's Inc.*,
  No. 16-CV-0868, 2017 WL 5010030 (E.D. Pa. Nov. 2, 2017)...........................7

*Casco v. Ponzios RD, Inc.*,
  No. 16-2084 (RBK/JS), 2021 WL 870709 (D.N.J. Mar. 9, 2021) ..............31, 32

*Dreyer v. Altchem Envtl. Servs.*,
  No. 06-2393 (RBK), 2007 WL 7186177 (D.N.J. Sept. 25, 2007).....................10

*Freeman v. Sam's East Inc.*,
  No. 2:17-1786 (WJM), 2018 WL 5839857 (D.N.J. Nov. 8, 2018).............. 14-15

*Garcia v. Vertical Screen, Inc.*,
  387 F. Supp. 3d 598 (E.D. Pa. 2019)............................................... 3-4

*Gerry v. Lin*,
  No. 4:18-CV-00010-JHM, 2019 WL 187870 (W.D. Ky. Jan. 14,
  2019) .....................................................................................19

*Henry v. Express Scripts Holding Co.*,
  No. 14-2979 (SRC), 2015 WL 790581 (D.N.J. Feb. 24, 2015) ..........................3

*Ide v. Neighborhood Rest. Partners, LLC*,
  32 F. Supp. 3d 1285 (N.D. Ga. 2014), *aff'd on other grounds*, 667
  F. App'x 746 (11th Cir. 2016) ......................................................... 7-8

*James v. Boyd Gaming Corp.*,
    522 F. Supp. 3d 892 (D. Kan. 2021)............................................................30, 31

*Karlo v. Pittsburgh Glass Works, LLC*,
    849 F.3d 61 (3d Cir. 2017) ...............................................................................4, 5

*Koenig v. Granite City Food & Brewery, Ltd.*,
    No. 16-1396, 2017 WL 2061408 (W.D. Pa. May 11, 2017) ..............................31

*MacMann v. Tropicana Entertainment, Inc.*
    RWS, 2021 WL 1105500, at *3 (E.D. Mo. Mar. 23, 2021) ...............................30

*Nisnick v. U.P.S.*,
    242 F. Supp. 3d 341 (D.N.J. 2017).....................................................................28

*Puerto v. Moreno*,
    No. 19-25282-Civ-Scola, 2021 WL 849095 (S.D. Fla. Mar. 5,
    2021) ......................................................................................................................7

*Reed v. Empire Auto Parts, Inc.*,
    No. 13-5220, 2015 WL 761894 (D.N.J. Feb. 23, 2015)........................ 13-14, 34

*Reynolds v. Turning Point Holding Co.*,
    No. 2:19-cv-01935-JDW, 2020 WL 7336932 (E.D. Pa. Dec. 14,
    2020) ............................................................................................................. 15-16

*Roberts v. Apple Sauce, Inc.*,
    945 F. Supp. 2d 995 (N.D. Ind. 2013) ................................................................16

*Saldana v. Bird Rd. Car Wash, Inc.*,
    No. 15-cv-23329, 2016 WL 5661632 (S.D. Fla. Sept. 30, 2016).........................7

*Schaefer v. Walker Bros. Enters., Inc.*,
    829 F.3d 551 (7th Cir. 2016) ..............................................................................19

*Shala v. Dimora Ristorante, Inc.*
    2016 WL 7386954, at *2 (D.N.J. Dec. 21, 2016)........................................15, 16

*Siu Ching Ha v. 4175 LLC*,
    No. 15-5530 (ES) (MAH), 2018 WL 1509090 (D.N.J. Mar. 27,
    2018) .............................................................................................................13, 34

iii

*Skaggs v. Gabriel Bros.*,
 No. 1:19-CV-02032, 2021 WL 254113 (M.D. Pa. Jan. 26, 2021) ......................4

*Symczyk v. Genesis Healthcare Corp.*,
 656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66
 (2013) .................................................................................................................3

*Weigang Wang v. Chapei LLC*,
 No. 15-2950 (MAS) (DEA), 2017 WL 3584199 (D.N.J. Aug. 18,
 2017) .................................................................................................................4

*Wintjen v. Denny's, Inc.*,
 No. 2:19-CV-00069-CCW, 2021 WL 5370047 (W.D. Pa. Nov. 18,
 2021), *appeal docketed*, No. 21-8051 (3d Cir. Dec. 2, 2021) ..................... 31-32

*Zavala v. Wal-Mart-Stores, Inc.*,
 No. 03-5309 (GEB), 2010 WL 2652510 (D.N.J. June 25, 2010),
 *aff'd*, 691 F.3d 527 (3d Cir. 2012) ................................................................ 4-5

## Statutes

29 U.S.C. § 203(m) .................................................................................................6, 18

29 U.S.C. § 216(b) ........................................................................................................3

Fair Labor Standards Act (FLSA)...............................................................*passim*

## Other Authorities

29 C.F.R. § 531.59(b) ...................................................................................6, 7, 28

F.R.E. 407 .................................................................................................................28

iv

Plaintiff Jorge Rosa ("Plaintiff"), a former Beverage Server at Tropicana Atlantic City Corporation d/b/a Tropicana Casino Resort ("Tropicana Atlantic City" or the "Company"), asserts three claims against Tropicana Atlantic City under the Fair Labor Standards Act ("FLSA"), two of which—his tip-credit-notice claim (Count II) and his overtime-miscalculation claim (Count III)—he now asks this Court to conditionally certify.  Specifically, Plaintiff seeks to certify the following collective classes under the FLSA: (1) "All hourly, non-exempt employees at Tropicana [Atlantic City] who were paid . . . less than $7.25 per hour and for whom a tip credit was claimed at any time from three years prior to the filing of the original Complaint to the present"; and (2) "All hourly, non-exempt employees at Tropicana [Atlantic City] who were paid . . . less than $7.25 per hour and worked more than 40 hours in any workweek from three years prior to the filing of the original Complaint to the present."  Plaintiff's Notice of Motion for Conditional Certification ("Pl.'s Mot.") (ECF No. 45), p. 2.  Simply stated, Plaintiff's Motion should be denied because it does not establish that Plaintiff and the putative collectives were the victims of a single decision, policy, or plan, as required under the FLSA.

Plaintiff's Motion is based on nothing more than his own unique, personal experiences as a Beverage Server at Tropicana Atlantic City, not any common practice or policy.  Indeed, with regard to his claim that Tropicana Atlantic City failed to give him and all other tipped employees sufficient tip-credit notice, the only

1

evidence Plaintiff offers to support conditional certification of this claim is his own declaration describing the information that he *personally* received (or allegedly did not receive) from Tropicana Atlantic City regarding his tipped compensation. Tellingly, neither Plaintiff's Motion nor his declaration offer any insight as to what compensation-related information any other tipped employee in any department— including the department in which Plaintiff himself worked—received from the Company.  The absence of such evidence is, of course, unsurprising because Plaintiff confirmed at his deposition that he has no knowledge whatsoever about what types of compensation-related information any other employee ever received from Tropicana Atlantic City.  Plaintiff similarly testified that he has no clue how his own overtime was calculated, thereby making it impossible for him to determine whether his overtime was calculated improperly and most certainly impossible for him to assess whether he and all other putative collective members would assert the same claim in that regard.

In other words, Plaintiff's Motion does not contain any evidence to demonstrate that his claims are representative of the entire putative collectives he seeks to represent and therefore does not satisfy any standard for conditional certification under the FLSA.  Plaintiff's Motion should be denied.

604572006.34

## ARGUMENT

## I.     Plaintiff's Request for Conditional Certification Should Be Denied

### A.     Legal Standard Applicable to Conditional Certification Motions

The FLSA authorizes an employee to pursue a civil action to recover unpaid overtime on his own behalf as well as other employees who are "similarly situated." 29 U.S.C. § 216(b).  To prove he is similarly situated with the putative class he seeks to represent under Section 216(b), a plaintiff must demonstrate that he and the putative class "were victims of a common policy or plan that evaded the law." *Henry v. Express Scripts Holding Co.*, No. 14-2979 (SRC), 2015 WL 790581, at *1 (D.N.J. Feb. 24, 2015).

When a plaintiff seeks conditional certification early in a case, courts typically only require him to make a modest factual showing to support his request; however, this showing still requires the plaintiff to offer "'evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees.'"  *Id.* (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013)).  In other words, even under this modest standard, a plaintiff's request for conditional certification cannot be "based 'solely on allegations in the complaint; some factual support must be provided, such as in the

form of affidavits, declarations, deposition testimony, or other documents.'" *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 603 (E.D. Pa. 2019) (citation omitted).

However, when the parties have performed substantial discovery, courts in the Third Circuit (including those in this District) often apply a heightened standard of review to requests for conditional certification. *See, e.g.*, *Weigang Wang v. Chapei LLC*, No. 15-2950 (MAS) (DEA), 2017 WL 3584199, at *2 n.1 (D.N.J. Aug. 18, 2017) (noting that the lower standard of scrutiny applies when "little or no discovery" has taken place whereas the "stricter standard is more appropriate when plaintiffs move for conditional certification near or after the close of discovery").[1]  Under this more rigorous standard, courts assess whether the plaintiff is similarly situated to the putative collective by considering various factors such as "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85–86 (3d Cir. 2017) (emphasis, internal quotation marks and citation omitted).  In other words, the plaintiff must show

---

[1]     The United States District Court for the Middle District of Pennsylvania recently applied an intermediate standard of review to the plaintiff's motion for conditional certification because the parties had exchanged discovery requests and taken various depositions.  *Skaggs v. Gabriel Bros.*, No. 1:19-CV-02032, 2021 WL 254113, at *9 (M.D. Pa. Jan. 26, 2021).  Explaining the rationale for such decision, the court held, "from the plaintiff to whom much discovery is given, much proof is expected in return."  *Id.* (citation omitted).

4

similarities beyond "mere facts of job duties and pay provisions." *Zavala v. Wal-Mart-Stores, Inc.*, No. 03-5309 (GEB), 2010 WL 2652510, at *3 (D.N.J. June 25, 2010), *aff'd*, 691 F.3d 527 (3d Cir. 2012) (internal quotation marks omitted). "The existence of individualized defenses and procedural concerns" typically preclude the plaintiff from satisfying the similarly situated requirement. *Karlo*, 849 F.3d at 86 (internal quotation marks and citation omitted).

Substantial discovery has certainly occurred in this case. The parties exchanged written discovery requests and corresponding documents and took multiple depositions of witnesses in which they inquired about, among other things, issues bearing on conditional certification. Specifically, Plaintiff deposed Tropicana Atlantic City's corporate representative, and Tropicana Atlantic City deposed: (a) the original named plaintiff (albeit briefly since she abruptly terminated her deposition), (b) Plaintiff, (c) one individual who submitted a consent-to-join form and (d) several other individuals who qualify as putative collective members. The parties have engaged in extensive discovery regarding the claims at issue in this case and the similarities (or lack thereof) between Plaintiff and the putative collectives he seeks to represent. As such, Plaintiff must satisfy the more rigorous standard of review, which he cannot do.

Notwithstanding the foregoing, even if the Court is inclined to overlook the significant discovery that has occurred and assess Plaintiff's Motion under the lower standard of review, it still must deny Plaintiff's Motion for lack of evidence.

**B.    Plaintiff Has Not Made The Requisite Showing For Conditional Certification Of His Tip-Credit-Notice Claim.**

**1.    Plaintiff overstates the FLSA's tip-credit-notice requirements.**

Plaintiff seeks to represent a collective comprised of "[a]ll hourly, non-exempt employees at Tropicana [Atlantic City] who were paid . . . less than $7.25 per hour and for whom a tip credit was claimed at any time from three years prior to the filing of the original Complaint to the present."  Pl.'s Mot. p. 2.  Plaintiff bases that request on the contention that Tropicana Atlantic City had "*no policy*" in place for providing certain tip-credit information to its tipped employees making a base hourly rate of less than minimum wage ("Tipped Employees"); according to Plaintiff, the lack of such policy constitutes a "common failing that supports conditional certification." Memorandum of Law in Support of Plaintiff's Motion for Conditional Certification (ECF No. 45-1)("Pl.'s Mem."), p. 8.

There are a number of fatal flaws with Plaintiff's contention, not the least of which is the fact that it rests entirely on the inaccurate notion that, in order to comply with the FLSA's tip-credit-notice requirements, an employer must essentially read each subsection of 29 C.F.R. § 531.59(b) verbatim.  Numerous courts have rejected

that proposition.  *See*, *e.g.*, *Acosta v. Las Margaritas, Inc.*, No. 16-1390, 2018 WL 6812370, at *9 (E.D. Pa. Dec. 27, 2018) ("[C]ourts have uniformly held that—as stated in 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b)—employers are required only to *inform* employees of their intention to take the tip credit, not to *explain* the tip credit."); *Calabrese v. TGI Friday's Inc.*, No. 16-CV-0868, 2017 WL 5010030, at *5 (E.D. Pa. Nov. 2, 2017) (finding the employer satisfied its tip-credit-notice obligations by informing its employees in verbal and written ways about their ability to earn at least minimum wage through tips on top of their sub-minimum base hourly rate and the amount of the tip credit); *Puerto v. Moreno*, No. 19-25282-Civ-Scola, 2021 WL 849095, at *5 (S.D. Fla. Mar. 5, 2021) ("[A]n employer does not have to provide a rigorous explanation of how the tip credit works, rather, it is sufficient to inform employees of it."); *Saldana v. Bird Rd. Car Wash, Inc.*, No. 15-cv-23329, 2016 WL 5661632, at *3 (S.D. Fla. Sept. 30, 2016) (noting that courts have found the notice requirement satisfied where employers distribute written materials explaining the tip policy, verbally inform employees of the policy, and prominently display a United States Department of Labor ("DOL") poster explaining the tip credit); *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1292–93 (N.D. Ga. 2014) (finding the employer satisfied its tip-credit-notice obligations by posting a DOL poster and distributing its employee handbook, which informed employees of their guaranteed minimum wage rate and that the employer would

make up the difference between any subminimum wage rate and minimum wage rate if the employees' tips fell short), *aff'd on other grounds*, 667 F. App'x 746 (11th Cir. 2016).

In light of the foregoing, even if Plaintiff had introduced evidence showing Tropicana Atlantic City "commonly failed" to read each subsection of § 531.59(b) to all of its Tipped Employees (which, as explained herein, he most certainly did not), that evidence would not establish a violation of the FLSA and, thus, would not constitute any purported common policy or plan for purposes of conditional certification of this claim.  Further, contrary to Plaintiff's suggestion, he has not offered (and cannot possibly offer) any evidence to support his claim that Tropicana Atlantic City commonly failed to provide sufficient tip-credit notice to all of its Tipped Employees.

> **2.     There is no evidence from which this Court can infer that Plaintiff's alleged personal experiences are representative of all other Tipped Employees.**

While Plaintiff avers that Tropicana Atlantic City failed to provide him with requisite notice of its intention to claim a tip credit on his wages, Plaintiff offers no evidence from which this Court can infer that his personal experiences are representative of all other Tipped Employees.  Instead, Plaintiff merely offers the Court his own self-serving declaration (the "Declaration"), which describes only the information that he personally received (and allegedly did not receive) from the

604572006.34

Company regarding his tipped compensation.  *See* Pl.'s Mem. Ex. 3 (ECF No. 45-5).  Specifically, Plaintiff states in his Declaration that the Company told him "the amount of [his] base hourly wage" and that he "would also make tips, or tokes, in addition to [his] base hourly wage" but shared no other information with him regarding tip credits.  *Id.* ¶ 5.

As a preliminary matter, Plaintiff's definitive statements as to what he was told and not told by the Company on this subject are completely unreliable as they are inconsistent with his prior deposition testimony.  At his deposition, Plaintiff clearly testified that he did not remember what Tropicana Atlantic City told him regarding his compensation.  *See* Declaration of Courtney J. Peterson in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification ("Peterson Decl."), Ex. A, Relevant Excerpts from Plaintiff's Deposition ("Pl.'s Dep."), 125:1–5 ("Q.  Do you recall what specifically was told to you as a beverage server . . . about your pay?  A.  Don't remember.").  Yet, **six minutes after that deposition concluded**, Plaintiff signed his Declaration, averring with complete absoluteness that Tropicana Atlantic City did <u>not</u> provide him with specific pieces of information.  *See* Pl.'s Mem. Ex. 3 ¶¶ 6–11 (electronically signed at 2:08 pm); Peterson Decl., Ex. A, Pl.'s Dep. 135:20 (deposition concluded at 2:02 pm).

The only plausible inference to make from these facts is that Plaintiff's counsel prepared Plaintiff's Declaration prior to his deposition, and Plaintiff signed

9

the Declaration immediately after without closely reading the statements set forth therein.  Given the inconsistencies between Plaintiff's Declaration and deposition testimony, the Court should disregard any statements contained in, or arguments based upon, the Declaration for purposes of his Motion.  *See Dreyer v. Altchem Envtl. Servs.*, No. 06-2393 (RBK), 2007 WL 7186177, at *8–9 (D.N.J. Sept. 25, 2007) (declining to consider an affidavit submitted in support of a motion for conditional certification that contained "unsubstantiated assertions").

Even if the Court accepts the Declaration at face value, it does nothing to support Plaintiff's case for conditional certification.  The Declaration does nothing more than describe the information Plaintiff *personally* received (and allegedly did not receive) from Tropicana Atlantic City with regard to tip credits.  Quite tellingly, it makes no mention about what tip-credit information *any other* Tipped Employee received.  In other words, Plaintiff's Declaration does not raise any inference whatsoever that Tropicana Atlantic City has a common practice, policy, or plan with regard to the manner in which it informs Tipped Employees of its intention to claim a tip credit on their wages.

Plaintiff's failure to make any collective-based statements in his Declaration is unsurprising considering that he admitted at his deposition that he has no idea whether there is any commonality between himself and all other Tipped Employees for purposes of this claim.  Indeed, Plaintiff testified that he did not recall what

10

information Tropicana Atlantic City provided to him with regard to tip credits, which, in and of itself, would make it impossible for Plaintiff to conclude that he is similarly situated to any other Tipped Employee.  Peterson Decl., Ex. A, Pl.'s Dep. 125:1–5 ("Q.  Do you recall what specifically was told to you as a beverage server . . . about your pay?  A.  Don't remember.").  Not only that, Plaintiff admitted that he has no idea what tip-credit information *any* other Tipped Employee has received from Tropicana Atlantic City ("Q. Do you know what anyone else at the casino was told about their pay?  A. I'm not sure.  Q. Okay. You don't know?  A. I don't know."). *Id*. 125:7–12.

Plaintiff's admitted lack of knowledge about other Tipped Employees makes complete sense considering, at his deposition, he could not even identify more than a few other hourly positions at Tropicana Atlantic City (let alone tipped positions) outside of his former department:

| | | |
|---|---|---|
| Q. | Do you know if there are hourly positions outside of the food and beverage department? | |
| A. | No. | |
| Q. | Meaning, you do not know? | |
| A. | I don't know. | |
| Q. | Can you name any other hourly positions outside of food and beverage? | |
| A. | Housekeeping. | |
| . . . . | | |
| Q. | Any other positions you can name outside of food and beverage that you believe are hourly? | |
| A. | Is it EVS, environmental services? | |
| Q. | Do you know what their title is? | |
| A. | I'm not sure. | |

11

. . . .

Q.    Any other hourly positions that you're aware of outside of food
       and beverage?

A.    No.

*Id.* 57:5–58:19.  Plaintiff further evidenced his lack of knowledge about the putative

collective when he failed to describe whom he intended to represent in this case (for

this claim or any other claim):

Q.    Do you understand that you're now a named plaintiff in this
       case?

A.    Yes.

Q.    Do you know what that means?

A.    Yes.

Q.    What does that mean?

A.    I represent other people in the lawsuit.

Q.    What other people?

A.    My co-workers who are some of the union employees.

Q.    Okay.  Which co-workers? . . . Not by name, by position, which
       co-workers?

. . . .

A.    I don't know who they are.

*Id.* 67:9–68:4.

Plaintiff's inability to connect his own personal experiences to a single other

member of the putative collective (and his general lack of knowledge about the

putative collective) is fatal to his request for conditional certification.  Courts in this

District have consistently rejected requests for conditional certification for this exact

reason.

For example, in *Armstrong v. Weichert Realtors*, the plaintiff in that case

supported his request for conditional certification by proffering a declaration in

12

which he merely described his own personal experiences regarding unpaid overtime.

No. 05-3120 (JAG), 2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006).  Finding

such evidence insufficient to justify conditional certification, the court held:

> This Court cannot determine, from this declaration, whether Armstrong
> actually knew other [putative collective members] who were required
> to perform unpaid overtime work, and what he knew specifically about
> their unpaid work. **Conspicuously absent from the declaration is any
> specific statement about even one particular loan officer known to
> Armstrong as having been required to perform unpaid overtime
> work.** Plaintiff thus offers no evidence that other loan officers were
> required to perform unpaid overtime work.
>
> * * *
>
> [I]n the absence of any supporting factual assertions, it does not allow
> this Court to infer the existence of a company policy that would be
> expected to result in a class of similarly situated loan officers.
>
> **At best, Armstrong's declaration provides a factual basis for
> inferring that one loan officer—Armstrong—in one office was
> required to work unpaid overtime.** It does not provide a basis to infer
> that a class of similarly situated loan officers exists.

*Id.* (emphasis added); *see also Siu Ching Ha v. 4175 LLC*, No. 15-5530 (ES) (MAH),

2018 WL 1509090, at *4 (D.N.J. Mar. 27, 2018) (declining conditional certification

where the plaintiffs had no personal knowledge about whether any putative

collective member worked overtime and otherwise failed to "equate their personal

situations with the other putative class members"); *Reed v. Empire Auto Parts, Inc.*,

No.   13-5220,   2015   WL   761894,   at   *7   (D.N.J.   Feb.   23,

2015) (denying conditional certification and holding the court would not draw

13

"extremely attenuated inference[s]" where the plaintiff lacked sufficient knowledge of other employees and assumed facts rather than put forth appropriate evidence).

Similarly, here, Plaintiff offers this Court no evidence from which the Court can plausibly infer that he and all other Tipped Employees received the same information (or lack thereof) with regard to tip credits. Rather, just like the plaintiff's declaration in *Armstrong*, conspicuously absent from Plaintiff's Declaration (and entire Motion) here is *any* allegation regarding what information *any other* Tipped Employee ever received (or allegedly did not receive) from Tropicana Atlantic City on this subject. Thus, just as the Court in *Armstrong* held, this Court should find that, at best, Plaintiff's evidence only provides a factual basis for inferring that one employee, Plaintiff, may not have received certain tip-credit information; "[i]t does not [however] provide a basis to infer that a class of similarly situated [Tipped Employees] exists." *Armstrong*, 2006 WL 1455781, at *2.

Plaintiff asks this Court to infer and speculate—with no evidence whatsoever—that, because he allegedly did not receive certain tip-credit information, all other Tipped Employees must have likewise not received such information. Courts have made clear that, even under the most lenient standard of review, conditional certification cannot be granted on that basis. *See*, *e.g.*, *Freeman v. Sam's East Inc.*, No. 2:17-1786 (WJM), 2018 WL 5839857, at *3 (D.N.J. Nov. 8, 2018) (denying conditional certification under the lenient standard because the plaintiff

14

asked the court to assume and speculate that, simply because he performed non-managerial tasks, all other individuals in his position must have as well).

In fact, courts in this District have rejected conditional certification on this exact claim when asked to make speculative inferences about the plaintiff and putative collective.  For example, in *Shala v. Dimora Ristorante, Inc.*, the plaintiff submitted a declaration in which he stated that neither he nor anyone else in his position was given notice of the defendant's intention to take a tip credit on their wages.  No. 2:16-03064 (WJM), 2016 WL 7386954, at *2 (D.N.J. Dec. 21, 2016).  The court found such evidence insufficient to satisfy the modest standard for conditional certification, reasoning:

> The Court finds that, while the threshold for conditional certification is modest, at this stage Plaintiff has failed to provide evidence beyond "pure speculation" of a "factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees."  **Instead, Plaintiff asks this Court to infer that because his rights may have been violated, the rights of all Tipped Workers at Dimora were violated.  Plaintiff has submitted no evidence—other than Plaintiff's own statements in his declaration—to support the existence of a companywide policy in violation of the FLSA**. . . . At bottom, Plaintiff is asking this Court to speculate, based on his declaration alone, that other workers are similarly situated to him.  "Courts in this Circuit, however, have routinely found that such speculation is not proper."

*Id.* at *3–4 (emphasis added) (citations omitted); *see also Reynolds v. Turning Point Holding Co.*, No. 2:19-cv-01935-JDW, 2020 WL 7336932, at *9 (E.D. Pa. Dec. 14, 2020) (declining to conditionally certify the plaintiff's tip-credit-notice claim, in part,

15

because the plaintiff had "no evidence about the substance of conversations that [the defendant's] managers had with other new employees to disclose the tip credit").[2]

Just like the plaintiff in *Shala*, here, "Plaintiff has submitted no evidence—other than Plaintiff's own statements in his [D]eclaration—to support the existence of a companywide policy in violation of the FLSA."  2016 WL 7386954, at *3.  Not only that, Plaintiff's Declaration, as well as his conclusory allegations and arguments regarding the putative collective, are contradicted by testimony from other Tropicana Atlantic City employees who work in departments that employ Tipped Employees.

By way of example, Elizabeth Cross ("Ms. Cross"), a current supervisor in Plaintiff's former Food & Beverage Department, and former Tipped Employee herself (and current putative collective member), testified that, when she was a Tipped Employee, the Company provided her with a plethora of information pertaining to her tipped compensation.  Indeed, Ms. Cross testified that the Company informed her about (among many other things) the fact that her base hourly rate was less than minimum wage, that she would earn at least minimum wage through tips, and that the Company intended to claim a credit on her wages for the amount of such

---

[2]     Courts outside the Third Circuit have reached the same conclusion when faced with similar evidence. *See*, *e.g.*, *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995, 1004 (N.D. Ind. 2013) (finding the plaintiff's recitation of what he was personally told (or not told) about tip credits did not demonstrate a common policy or plan for purposes of conditional certification).

tips earned.  *See* Peterson Decl., Ex. B, Relevant Excerpts from Elizabeth Cross'
Deposition ("Cross Dep."), 18:2–19:14, 23:11–13, 25:8–26:5, 33:9-19.  Simply put,
Ms. Cross testified that she disagreed with Plaintiff's allegation that Tropicana
Atlantic City fails to give Tipped Employees sufficient tip-credit notice.  *Id.* 33:22–
34:3.

Further, Beverly Quinn and Bruce D'Allessandro, current employees of the
Table Games Department, which employs Tipped Employees, both offered
deposition testimony to that same effect.  *See* Peterson Decl., Ex. C, Relevant
Excerpts from Beverly Quinn's Deposition ("Quinn Dep."), 43:6–10, 45:7–18
(testifying that, when her base hourly rate was less than the federal minimum wage,
the Company informed her of that fact and told her she would make at least minimum
wage through tips), 45:21–48:10 (testifying that she understood the Company
claimed a tip credit on her wages); Peterson Decl., Ex. D, Relevant Excerpts from
Bruce D'Allesandro's Deposition ("D'Allesandro Dep."), 42:10–16 (testifying that,
when his base hourly rate was less than the federal minimum wage, the Company
informed him that it was taking a credit based on the tips he received and that he was
entitled to retain the tips he received), 55:6–56:9 (testifying that the Company
provided him with all the information he needed to understand his tipped
compensation and he has never heard anyone express confusion about their tipped
compensation).

17

For all of the foregoing reasons, Plaintiff has failed to offer sufficient evidence to satisfy his burden for conditional certification of this claim.

### 3.   Prior to January 2020, Tropicana Atlantic City satisfied its tip-credit-notice obligations through a combination of methods, most of which varied from employee to employee.

As noted above, Plaintiff holds no personal knowledge to support any of his class-wide allegations.   In an apparent attempt to circumvent that shortcoming, Plaintiff spends the majority of his Memorandum discussing the deposition testimony of Tropicana Atlantic City's corporate representative, Michael Pompei ("Mr. Pompei").   According to Plaintiff, Mr. Pompei's testimony establishes that the Company "commonly failed" to provide tip-credit notice to its Tipped Employees. Simply stated, Mr. Pompei's testimony establishes no such thing.

At his deposition, Mr. Pompei testified that, prior to January 2020, the Company conveyed tip-credit notice through a combination of methods, including, among other things, written documents (such as payroll documents, DOL posters, tip reporting policies, collective bargaining agreements, new-hire PowerPoint presentations, employee portal, etc.) as well as verbal communications (including conversations that occurred during the interview, orientation, and training processes).[3]   *See* Peterson Decl., Ex. E, Relevant Excerpts from Michael Pompei's

---

[3]     Courts throughout the country have made clear that the FLSA allows employers to provide tip-credit notice through a combination of written **and verbal** means.   *See Acosta*, 2018 WL 6812370, at *8–10 (finding an employer provided

Deposition ("Pompei Dep."), 23:21–25:10, 95:19–96:6, 100:7–101:1, 102:22–103:11, 104:4–22, 108:21–110:2.  However, contrary to Plaintiff's suggestions, Mr. Pompei made abundantly clear that both the methods employed and specific information conveyed by Tropicana Atlantic City with regard to tip credits varied from employee to employee.  *Id*. 105:24–108:20, 117:12–118:9.

Of particular importance, Mr. Pompei testified that, prior to January 2020, Tipped Employees received a significant amount of information regarding their tipped compensation through *individualized* verbal conversations.  *Id*. 55:24–11, 105:24–108:20, 119:17–121:1.  Many of these verbal conversations transpired and still transpire as early as the interview process, as many interviewers disclose to potential Tipped Employees various compensation-related information, including, among other things, their potential base hourly rate, their ability to earn tips, their right to earn minimum wage, etc.  *See* Peterson Decl., Ex. F, Declaration of Vice President of Food and Beverage, Chris Rippy ("Rippy Decl."), ¶ 6.  However, as one

---

sufficient tip-credit notice through verbal and written communications); *Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 558 (7th Cir. 2016) (noting that "§ 203(m) does not say that all of the [tip credit] information must be in a single document"); *Gerry v. Lin*, No. 4:18-CV-00010-JHM, 2019 WL 187870, at *3 (W.D. Ky. Jan. 14, 2019) (noting that, "[a]lthough written notice is frequently provided, it is not required to satisfy the employer's notice burden"); *Berger v. Perry's Steakhouse of Illinois, LLC*, 430 F. Supp. 3d 397, 416 (N.D. Ill. 2019) (recognizing that an employer's tip-credit notice obligations "may be satisfied through a combination of materials or conversations").

might expect, the precise information conveyed during these interviews varied and still varies depending on the particular interviewer and applicant.[4]  *Id.* ¶ 7.

Once hired, Tipped Employees typically receive additional information regarding their tipped compensation during the new-hire orientation process conducted by the Human Resources Department.  Peterson Decl., Ex. E, Pompei Dep. 30:25–31:12.  During this process, a Human Resources employee displays a PowerPoint presentation, which contains information regarding the Company's tipping procedures, and then verbally expounds upon such content.  *Id.* 121:2–122:22.  While the substance of these verbal presentations varies from one orientation to the next, presenters often (a) discuss the right of Tipped Employees to earn minimum wage through their base rate and tips (or make-up pay), (b) direct Tipped Employees to resources where they can find additional compensation-related information, and (c) encourage Tipped Employees who are union members to speak with their union representatives regarding the compensation terms set forth in their

---

[4]  The variances in these conversations makes complete sense because, depending on the applicants' backgrounds, one applicant may require a more detailed explanation whereas another applicant may require no explanation at all. Take Plaintiff, for example.  Plaintiff previously worked in several tipped positions. Peterson Decl., Ex. A, Pl.'s Dep. 28:1–31:23.  As such, Plaintiff may not have asked any specific questions about his potential compensation during the interview process, whereas an applicant with no such experience may ask numerous questions, thereby prompting the interviewer to provide far more details regarding the issue of tip credits.

collective bargaining agreements. *Id*. 30:25–31:12, 102:22–103:11, 104:4–22, 105:25–108:6, 117:12–118:9, 119:17–121:1.

Following the human resources department's new-hire orientation, Tipped Employees undergo training in their specific departments, at which time they receive additional information regarding tips and tip credits. Peterson Decl., Ex. E, Pompei Dep. 94:25–95:8, 96:7–98:4; Peterson Decl., Ex. F, Rippy Decl. ¶ 12. Indeed, during this departmental training, department managers and supervisors engage in verbal conversations with Tipped Employees about their compensation, tips, and/or tip credits. Peterson Decl., Ex. F, Rippy Decl. ¶¶ 12–13. However, once again, because the participants of these conversations are always different, the precise substance of the information conveyed is not uniform. *Id.* ¶ 13.

Plaintiff admitted at his deposition that he has no knowledge about the substance of any of these communications with regard to **any other Tipped Employee**. Peterson Decl., Ex. A, Pl.'s Dep. 58:20–59:2, 61:22–62:15, 127:6–9, 128:8–12. Thus, Plaintiff attempts to evade all of the above individualized communications by claiming "there is no evidence . . . that lower-level casino managers are of their own accord . . . providing tipped employees with the information required by the FLSA." Pl.'s Mem. p. 17. As a preliminary matter, in making that argument, Plaintiff improperly attempts to shift his burden to prove the existence of a commonly deficient policy or plan over to Tropicana Atlantic City to

prove the contrary.  Putting that aside, Plaintiff's argument is factually inaccurate because there is ample evidence that department-level managers verbally convey tip-credit information to Tipped Employees.  *See* Peterson Decl., Ex. E, Pompei Dep. 94:25–95:8, 96:13–98:4, 102:22–103:21; Peterson Decl., Ex. F, Rippy Decl. ¶¶ 6–9, 12–13.

Plaintiff further attempts to downplay the individualized verbal communications that are at play here by emphasizing that Tropicana Atlantic City does not provide a script to its department managers to convey any specific tip-credit information to Tipped Employees.  Pl.'s Mem. p. 17.  Ironically, Plaintiff's point only bolsters Tropicana Atlantic City's position that there is no commonality here. Rather than providing managers with a uniform "script," the Company relied on its managers to use their discretion as to how and when to communicate tip-credit information to Tipped Employees, which meant the precise substance of the communications varied from one employee to the next.  In other words, such evidence further demonstrates why conditional certification of this claim is inappropriate.  *See Bell v. PNC Bank, N.A.*, 800 F.3d 360, 375 (7th Cir. 2015) ("Cases in which low-level managers use their given discretion to make individual decisions without guidance from an overarching company policy do not satisfy commonality because the evidence varies from plaintiff to plaintiff").

Plaintiff similarly fails to meet his burden in arguing that the various written documents upon which Tropicana Atlantic City relied to communicate tip-credit information were *independently* insufficient to satisfy the Company's notice obligations.  Indeed, although Plaintiff dedicates a large portion of his Memorandum explaining why each document independently fails to satisfy the Company's tip-credit-notice obligations, he fails to appreciate that, prior to January 2020, it is undisputed that the Company did not rely on any one document to satisfy its notice obligations; rather, as already made clear, during that time, Tropicana Atlantic City relied on a *combination* of *various* written documents and verbal conversations to satisfy its tip-credit notice obligations.

Moreover, Plaintiff glosses over some of the important variances that exist within the written documents themselves—in particular, the distinct terms that exist within the three separate collective bargaining agreements ("CBAs") that governed the terms and conditions of certain Tipped Employees.  Although Plaintiff briefly mentions that Mr. Pompei identified three CBAs that provided tip-credit information to some of the Tipped Employees, he attempts to disregard such documents by arguing in conclusory fashion that they do not contain any specific tip-credit information.  Pl.'s Mem. pp. 13–14.

Contrary to Plaintiff's suggestions, the CBAs not only contain relevant tip-credit information, they demonstrate a further lack of similarity between the putative

collective members.  By way of example, Plaintiff was a member of the Unite Here Local 54 ("Local 54") union.  Peterson Decl., Ex. A, Pl.'s Dep. 49:5–12.  The CBA applicable to Plaintiff and other members of the Local 54 contains, among many other things, an entire section on "wages," which provides in pertinent part:

> Attached hereto and made a part of this Agreement as Schedule "A" and Schedule "B" is the wage scale applicable to the Employer.  The wages set forth in these Schedules are minimum wage rates only.  No employee shall suffer a reduction in wages as a result of the minimum wage scales set forth.  If at any time, the Federal or State minimum wage laws applicable to the hotel industry provide for rates more than those stated herein, said wage rates shall be adjusted to conform to a rate equal to five percent (5%) above the legal minimum.  Where, however, the minimum wage scale recited herein exceeds Federal or State minimum wage rates, the rates set forth in this contract shall prevail.  Regarding wage rates set forth in the attached schedule which may be below the applicable Federal or State minimum wages, it is acknowledged that credit for gratuities and/or food and lodging, where applicable, were considered in arriving at said rates.  The Union shall encourage employees to execute tip declaration reports or tip acknowledgement slips upon presentation by the Employer.

*See* Peterson Decl., Ex. G, CBA between Tropicana Atlantic City and Unite Here Local 54 (effective 2011 and subsequently extended through 2022) ("Local 54 CBA"), Section 13.1.[5]  Clearly, the above provision (and many other provisions) in Local 54's CBA would need to be considered in determining whether Plaintiff received notice of the Company's intent to claim a tip credit on his wages.   More

---

[5]      For the sake of clarity, relevant portions of the 2014 Local 54 CBA and its subsequent extensions are included as one exhibit.

importantly, the fact that Plaintiff was a party to this CBA renders him dissimilar to any non-Local 54 union employee, including those Tipped Employees (e.g., Dealers and Slot Attendants) who were members of other unions and whose terms and conditions of employment were governed by different CBAs.

Although the CBAs applicable to Tipped Employees who worked as Dealers and Slot Attendants contain a variety of language that bears on the issue of tip credits, the information contained therein is not identical to each other or to Local 54's CBA. *See*, *e.g.*, Peterson Decl., Ex. H, CBA between Tropicana Atlantic City and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW ("UAW") (Effective 2015 and extended through 2023), Arts. 16, 17 (discussing the minimum wage rates and overtime rates for Dealers) and 20 (discussing Dealers' ability to earn tokes)[6]; Peterson Decl., Ex. I, CBA between Tropicana Atlantic City and Teamsters Local 331 International Brotherhood of Teamsters ("Teamsters") (Effective 2014 and extended through 2022), Arts. 12, 13 (describing the minimum and maximum hourly rates for employees, overtime compensation, etc.), and 30.2 (describing employees' abilities to collect gratuities).[7]

---

[6]    For the sake of clarity, relevant portions of the 2015-2018 UAW CBA and its subsequent extensions are included as one exhibit.

[7]    For the sake of clarity, relevant portions of the 2014-2017 Teamsters CBA and its subsequent extensions are included as one exhibit.

604572006.34

Apparently recognizing that the CBAs provided Plaintiff and other Tipped Employees with valuable tip-credit information, and that the variations of such documents demonstrate a lack of commonality between the putative collective members, Plaintiff attempts to distance Tropicana Atlantic City's involvement with the CBAs by arguing that the Company takes no steps to "distribute [the] CBAs to tipped employees." Pl.'s Mem. p. 14. This is simply untrue. Although Mr. Pompei noted that it is ultimately the responsibility of the unions to provide copies of the CBAs to their members, he testified that the Company expressly directs Tipped Employees to resources where they can access those documents.[8] Peterson Decl., Ex. E, Pompei Dep. 63:18–64:4, 68:10–14, 145:7–15. Specifically, Mr. Pompei testified that the Company frequently refers Tipped Employees to their union representatives so they can engage in detailed verbal discussions regarding the specific compensation terms contained in their applicable CBA.[9] Id. 25:11–26:16, 64:23-65:19, 68:10-14, 109:13–110:2.

---

[8] Furthermore, Ms. Cross confirmed Mr. Pompei's statements in this regard, also testifying that CBAs are made available to employees. Peterson Decl., Ex. B, Cross Dep. 25:13–22.

[9] Plaintiff inaccurately argues that Tropicana Atlantic City relies on union representatives to convey tip-credit information because its other notification methods are insufficient. Pl.'s Mem. p. 16. That argument has no evidentiary basis. In no way did Mr. Pompei testify that the Company relies solely on those union conversations to satisfy its tip-credit-notice obligations. Rather, Mr. Pompei merely stated that the Company understands that those conversations routinely occur and that such conversations often include information regarding compensation, tips, tip

26

In sum, while Tropicana Atlantic City admits that, prior to January 2020, it utilized a number of general methods to satisfy its tip-credit-notice obligations, for all of the foregoing reasons, those methods were not "common" and certainly not "commonly deficient" as Plaintiff suggests.

> **4.**  **Even if the Court finds Tropicana Atlantic City had a "commonly deficient" tip-credit-notice plan or policy prior to January 2020, there is no evidence whatsoever to conditionally certify any collective that includes Tipped Employees who did not work at the Company before January 2020.**

Prior to January 2020, Tropicana Atlantic City relied on a combination of various written documents and verbal conversations to satisfy its tip-credit notice obligations. Because there was no commonality or uniformity to those methods, Plaintiff cannot demonstrate that his tip-credit notice claim is suitable for collective treatment. Notwithstanding that fact, should the Court conclude otherwise and grant conditional certification on this claim, it should not conditionally certify any collective that includes Tipped Employees who only worked for the Company in or after January 2020.

In January 2020, the Company began distributing a single "tip credit acknowledgment form" to Tipped Employees that conveyed all potentially relevant

---

credits, etc. Peterson Decl., Ex. E, Pompei Dep. 24:25–25:21. The Company simply (and properly) encourages Tipped Employees who are union members to utilize their union representatives as a resource for better understanding their contractual rights.

604572006.34

tip-credit information and has continued to send that same form to all new Tipped Employees starting at the Company.  Peterson Decl., Ex. E, Pompei Dep. 80:18–82:6.  Further, since January 2020, any time a Tipped Employee's base hourly rate changes, Tropicana Atlantic City sends a new "tip credit acknowledgment form," which apprises the Tipped Employee of all relevant tip-credit information related to that change.  Peterson Decl., Ex. E, Pompei Dep. 82:7–83:2; Peterson Decl., Ex. J, Tip Credit Acknowledgment Forms.

These acknowledgment forms undeniably satisfy any possible tip-credit-notice obligations that the Company bears.  Indeed, although not required by the FLSA, the forms essentially quote the exact text of 29 C.F.R. § 531.59(b).[10]  As such, there is simply no basis whatsoever for this Court to conditionally certify a collective that includes Tipped Employees who have only worked at Tropicana Atlantic City since the time that such written notice has been utilized (January 2020).

---

[10]    Contrary to Plaintiff's suggestions, by implementing this new written notice, Tropicana Atlantic City was not acknowledging that its prior methods were insufficient; rather, the Company merely chose to condense all of the tip-credit information that it previously provided through a variety of means into one concise, written document.  Peterson Decl., Ex. E, Pompei Dep. 91:1–13.  Moreover, even assuming *arguendo* that Plaintiff is correct about Tropicana Atlantic City's motivation for implementing such notice, the written notice forms would be considered evidence of subsequent remedial measures, which is inadmissible under F.R.E. 407.  *Nisnick v. U.P.S.*, 242 F. Supp. 3d 341, 345 n.2 (D.N.J. 2017) (noting evidence of subsequent remedial measures is inadmissible under F.R.E. 407).

Plaintiff's attempt to undermine the legitimacy of these forms is unpersuasive. Essentially, Plaintiff contends that the FLSA prohibits an employer from claiming more than $5.12 per hour as a tip credit, and, since the forms note that Tropicana Atlantic City claims $7.87 per hour as a tip credit, such forms are deficient. Pl.'s Mem. pp. 18–19. However, the DOL's Wage and Hour Division has made abundantly clear that an employer can claim a higher tip credit where, in states like New Jersey, the minimum wage rate is higher than the federal minimum wage rate. *See* Minimum Wages for Tipped Employees, U.S. Dep't of Labor, Wage and Hour Division, https://www.dol.gov/agencies/whd/state/minimum-wage/tipped (Sept. 30, 2021) (noting that New Jersey employers can claim a tip credit of up to $7.87 per hour on employees' wages). Accordingly, Tropicana Atlantic City is not only permitted to note the higher tip credit amount on the acknowledgment forms, it is *required* to do so.

In light of the foregoing, while this Court should deny any request for conditional certification of this claim for any period of time, it most certainly should deny any such request that encompasses Tipped Employees who only worked for Tropicana Atlantic City since January 2020.

### 5. Plaintiff's case law does not bolster his request for conditional certification.

Although Plaintiff cites to a number of cases in an attempt to support his request for conditional certification of this claim, all such cases are easily

distinguishable or inapposite.  For example, Plaintiff points the Court to an order issued in a similar case in the Eastern District of Missouri, *MacMann v. Tropicana Entertainment, Inc.*, but he fails to note that Judge Sippel actually <u>denied</u> the plaintiff's request to conditionally certify a collective comprised of all tipped employees with a base hourly rate below minimum wage—i.e., Judge Sippel denied the exact request that Plaintiff is making in this case.  No. 4:19-CV-404 RWS, 2021 WL 1105500, at *3 (E.D. Mo. Mar. 23, 2021).  In reaching that conclusion, Judge Sippel noted the plaintiff failed to show that she was similarly situated to all other tipped employees "since the information [she] received at departmental orientation would not have been the same" for everyone.  *Id.*  Similarly, here, Plaintiff has not shown, and cannot show, that he is similarly situated to all Tipped Employees because the tip-credit information conveyed during interviews, orientations, and department meetings is never identical.  Further, although Judge Sippel granted conditional certification on that claim for a subset of Table Games Dealers, he only did so because the plaintiff "presented further evidence corroborating [her] allegations with respect to table games dealers."  *Id.* at *2.  Conversely, here, Plaintiff admitted he has no evidence whatsoever about what tip-credit information other Beverage Servers received from Tropicana Atlantic City.  Pl.'s Dep. 125:1–12.

Plaintiff's reliance on *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892 (D. Kan. 2021) is also misplaced.  In *James*, the court noted its decision was a "close

call" but ultimately found the plaintiff demonstrated a "common failure" on the part of the employer to provide tip credit notice.  *Id.* at 912, 913–14.  However, the court noted the employer offered no real evidence to rebut the plaintiff's "common failure" theory.  The employer's corporate representative testified that he believed that tip-credit notice was provided to tipped employees but "offered nothing to support that belief."  *Id.* at 912.  Conversely, here, Mr. Pompei provided highly credible testimony in which he clearly articulated, at length, the various ways in which the Company satisfies its tip-credit-notice obligations.

Plaintiff also refers the Court to *Koenig v. Granite City Food & Brewery, Ltd.*, No. 16-1396, 2017 WL 2061408 (W.D. Pa. May 11, 2017), which offers no persuasive value here.  In *Koenig*, the plaintiff offered evidence of a common "flawed policy of oral notification," and the opinion does not indicate whether the employer ever argued that its verbal notice varied from one employee to the next. *Id.* at *3.  Here, as already discussed, Plaintiff has offered ***no*** evidence of a common oral policy with regard to tip-credit notification, much less a flawed one, and Tropicana Atlantic City has made clear that its verbal provision of such information varied from one employee to the next, from one department to the next, from one manager to the next, etc.

Plaintiff further directs the Court to *Casco v. Ponzios RD, Inc.*, No. 16-2084 (RBK/JS), 2021 WL 870709, at *9 (D.N.J. Mar. 9, 2021) and *Wintjen v. Denny's,*

31

*Inc.*, No. 2:19-CV-00069-CCW, 2021 WL 5370047, at *13 (W.D. Pa. Nov. 18, 2021), *appeal docketed*, No. 21-8051 (3d Cir. Dec. 2, 2021)—neither of which supports Plaintiff's request for conditional certification.  In *Casco*, the court granted conditional certification on the plaintiff's tip-credit claim, in large part, because the court found there were no individualized defenses at play and there were "not substantial differences in [the] employment experiences [of the collective]."  *Casco*, 2021 WL 870709, at *9.  In contrast, here, because Tipped Employees received various tip-credit information from various sources for the majority of the relevant period, there are many individualized defenses and substantial differences in the employment experiences of the putative collective.

Similarly, in *Wintjen*, the court noted that the employer put forth no evidence to suggest that the putative collective members "received verbal tip credit notice that materially deviated from Denny's company-wide policy" and the employer's corporate representative testified that each new hire received the same information with regard to tip credits.  *Wintjen*, 2021 WL 5370047, at *14, 17.  In other words, the employer in *Wintjen* conceded there were no individualized questions amongst the putative collective.  Quite the opposite here, Tropicana Atlantic City has made clear that, prior to January 2020, the specific information conveyed to Tipped Employees varied greatly from employee to employee in light of (among other things) the individualized verbal conversations that transpired during the interview,

32

onboarding, orientation, and training processes.  Peterson Decl., Ex. E, Pompei Dep. 56:4–11, 105:24–108:20, 119:12–121:1.

### C.    Plaintiff Has Not Made The Requisite Showing For Conditional Certification Of His Overtime Miscalculation Claim.

Plaintiff alleges that Tropicana Atlantic City miscalculated the overtime rate for Plaintiff and all other employees who earned a base hourly rate that was less than minimum wage by failing to include the amount of the tip credit in their "regular rate" of pay.  ECF No. 39, First Am. Compl. ¶¶ 49–50.  Based on that allegation, Plaintiff asks this Court to allow him to represent all "hourly, non-exempt employees at Tropicana who were paid a direct hourly wage that was less than $7.25 per hour and worked more than 40 hours in any workweek from three years prior to the filing of the original Complaint to the present."  Pl.'s Mot. p. 2.  Plaintiff's request should be denied for several reasons, not the least of which is the fact that Plaintiff admitted at his deposition that he has no idea whether or not his overtime-miscalculation allegations are true with regard to himself or any other employee.

Indeed, Plaintiff testified that he does not know how the Company calculated his own overtime, much less how it calculated the overtime for any other employee:

| | |
|---|---|
| Q. | Do you know whether any other hourly employees, outside of your—yourself, your position, whether they were entitled to one and a half times for any reason? |
| A. | (Nods head.) |
| Q. | Do you know how their overtime was calculated? |
| A. | No. |
| Q. | Do you know how your own overtime was calculated? |

A.      No.

Peterson Decl., Ex. A, Pl.'s Dep. 132:20–133:5.  Plaintiff further testified that he

does not actually remember if he ever worked more than 40 hours in a week and

essentially conceded that he has no reason to doubt Tropicana Atlantic City's records,

which indicate that, for his entire tenure at the Company, there were only two weeks

in which he worked more than 40 hours in a week.  *Id.* 130:18–131:3.

Plaintiff's failure to offer any personalized evidence or testimony to support

his overtime-miscalculation allegations comes as no surprise considering he testified

at his deposition that he believes overtime simply refers to any time that he

"work[ed] extra."  *Id.* 129:6–13.  In other words, Plaintiff does not even have a basic

understanding of his overtime-miscalculation claim and has offered no statements

from putative collective members or other evidence to support his request for

conditional certification of that claim.  For that reason, alone, his request should be

denied.  *Siu Ching Ha*, 2018 WL 1509090, at *4 (declining conditional certification

where the plaintiffs had no personal knowledge about whether any putative

collective member worked overtime and otherwise failed to "equate their personal

situations with the other putative class members"); *Reed*, 2015 WL 761894, at *7

(denying conditional certification and holding the court would not draw "extremely

attenuated inference[s]" where the plaintiff lacked sufficient knowledge of other

employees and assumed facts rather than put forth appropriate evidence).

The high volume of individualized inquiries that would be required for resolution of this claim further mandates denial of Plaintiff's request for conditional certification. For example, in order for the Court to assess Tropicana Atlantic City's liability on this claim, the Court will have no choice but to analyze each putative collective member's pay stubs to determine whether each employee worked overtime in a given pay period, and if so, whether they were properly compensated for such time. The sheer breadth of this analysis cannot be overstated, as it would require the Court to comb through thousands of pages of documents and perform countless mathematical calculations.

Furthermore, in connection with those calculations, the Court would have to consider whether the particular employee is a union member and, if so, whether such membership impacts the Company's liability. For example, if Plaintiff worked more than 10 hours in any workday, his union membership entitled him to receive overtime compensation for that extra time (*see* Local 54 CBA, § 12.2), whereas the FLSA would not entitle him to receive such overtime compensation. Thus, even if one of Plaintiff's pay stubs (or another union employee's pay stubs) reflects certain overtime hours, the Court would not be able to assume that such time was compensable as overtime under the FLSA. Rather, the Court would need to closely scrutinize all such overtime compensation to determine whether Plaintiff received such pay for working more than 40 hours in a workweek or whether he received such

pay solely because of his union's CBA.  The Court would have to conduct this same individualized analysis with regard to every other unionized Tipped Employee.

Given these necessary and unavoidable individualized inquiries, Plaintiff cannot possibly explain why collective treatment for this claim would be appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendant Tropicana Atlantic City Corporation d/b/a Tropicana Casino Resort respectfully requests that the Court deny Plaintiff's Motion and for such other relief that the Court deems just and proper.

Dated:  January 24, 2022

Respectfully submitted,

**BRYAN CAVE LEIGHTON
PAISNER LLP**

By:  _/s/ Courtney J. Peterson_____
Courtney J. Peterson
Chris M. LaRocco
1290 Avenue of the Americas
New York, NY  10104-3300
(212) 541-3187 (telephone)
(212) 541-1487 (facsimile)
courtney.peterson@bclplaw.com
chris.larocco@bclplaw.com

Amanda E. Colvin, admitted *pro hac vice*
Charles B. Jellinek, admitted *pro hac vice*
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102-2750
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)
cbjellinek@bclplaw.com
amanda.colvin@bclplaw.com

***Attorneys for Defendant***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2022, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

*/s/ Courtney J. Peterson*

604572006.34